DOUGLAS R. MORTON, M.D., *et al.*, Plaintiffs-Appellants, *v.* ENVIRONMENTAL LAND SYSTEMS, LIMITED, *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 77-1126, 77-1251 cons.

Opinion filed November 23, 1977.

John T. Schriver and Steven H. Hoeft, both of Chicago (McDermott, Will & Emery, of counsel), for appellants.

Donald J. Kerwin, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal from two orders of the trial court—one of which granted defendants' motion to quash service of process (cause 77-1126) and the other denied plaintiffs' motion for costs and attorneys' fees (cause 77-1251).

In March, 1973, Dr. Morton, individually and as trustee of two trusts, purchased three partnership units in Environmental Land Systems, Limited (ELS), a limited partnership organized under Florida law for the purpose of real estate development. Owning one such unit individually, Dr. Morton subsequently purchased the remaining two units from the trusts and transferred four-tenths of one unit to William F. Hogan. In August, 1976, they and the other plaintiffs, residents of Illinois, brought this action against ELS and its general partners, seeking rescission of the original sales of units and damages based upon allegations of material misrepresentation, breach of fiduciary duty, and fraud. Defendants, who are nonresidents of Illinois, then filed a special and limited appearance, moving the trial court to quash service of process for want of personal jurisdiction, and appended to the motion affidavits of two general partners, Carl F. Gugino and Bradford Dingwell. In opposition to the motion, plaintiffs Morton and Hogan also filed affidavits and attached a letter from Dingwell to Hogan which was addressed to his Illinois office and dated November 17, 1972. After reviewing these documents and hearing argument, the trial court granted defendants' motion to quash service of process and found no just reason to delay enforcement or appeal. Later, the court denied motions of plaintiffs to amend their complaint and for attorneys' fees and costs.

In cause 77-1126, the issues are whether the trial court erred in quashing service on the nonresident defendants and whether the trial court improperly denied plaintiffs' motion to amend the complaint.

In cause 77-1251, plaintiffs contend that the trial court erred in denying their section 41 motion for costs and attorneys' fees. (Ill. Rev. Stat. 1975, ch. 110, par. 41.) In this motion, they alleged that defendants, without reasonable cause, made untrue statements in their motion to quash service of process and in the affidavits of Gugino and Dingwell which were appended to the motion. The appeals have been consolidated for the purposes of review.

It is clear that prior to February 1973, Gugino and Hogan met in Buffalo, New York, and that Hogan was identified as an investment counselor. Later, in a letter dated November 17, 1972, to Hogan addressed to his office in Illinois, Dingwell advertised partnership units in ELS for sale. Additionally, Gugino, while attending a business meeting in Chicago prior to February 1973, contacted Hogan (either by telephone call made in Chicago, according to Gugino; or, as stated by Hogan, in person at his office in Park Ridge, Illinois) to ascertain whether Hogan would be interested in selling partnership units.

Although Dingwell maintains that Morton first heard of ELS from a Florida real estate developer when Morton was in that state on vacation, the affidavit of the developer was not made a part of the record. To the contrary, Morton and Hogan maintain that the information and materials concerning ELS which Hogan had acquired from Gugino and Dingwell were transmitted by Hogan to Morton prior to the latter's Florida visit. In any event, the parties are in agreement that late in February 1973, Morton toured the ELS development in Florida, that partnership agreements were then mailed to Morton in Illinois and executed by him in Illinois, and that Morton sent checks from Illinois to Florida covering the purchase price of three units.

OPINION

■■ Plaintiffs first contend that the trial court erred in quashing service of process. It is their position that defendants' actions constituted minimum contacts with the State of Illinois so as to satisfy the requirements of section 17 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 17) and of due process of law. We agree.

Section 17 provides in pertinent part:

"An Act submitting to jurisdiction—Process. (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

* * *

(3) Only causes of action arising from acts enumerated herein

may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section." (Ill. Rev. Stat. 1975, ch. 110, par. 17.)

Illinois courts have consistently held that the legislature intended section 17 to exert personal jurisdiction over nonresidents to the extent permitted under the due process clause of the fourteenth amendment to the United States Constitution. (*E.g., Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 325 N.E.2d 812.) Due process requires that a nonresident defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The determination of whether defendants' contacts will support the exercise of personal jurisdiction turns on the specific facts of each case, and the existence or absence of jurisdiction depends on an assessment of the quality and nature of his activity. *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228.

■■■ In the assessment of a nonresident's contacts with the forum, it has been established that the physical presence of defendant or his agent is not needed (*First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324) and that a single transaction of business rather than a prolonged series of transactions can be sufficient (*Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78). Moreover, a defendant enjoys the benefits and protection of the laws of the forum where he avails himself of the privilege of conducting activities there (*Honeywell, Inc. v. Metz Apparatewerke* (7th Cir. 1975), 509 F.2d 1137), and activities such as the solicitation of a contract is the transaction of business within the statutory definition even where the actual acceptance of the contract occurred outside of the forum and where it was to be governed by nonforum law (*Scovill Manufacturing Co. v. Dateline Electric Co.* (7th Cir. 1972), 461 F.2d 897). Recently, in *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27, where a nonresident defendant telephoned a forum business enterprise to accept a bilateral contract, knowing that this enterprise would perform its contractual obligations within the forum, we held that such contacts were sufficient to satisfy the requirements of section 17 and of due process.

■■ Here, Gugino, while in Illinois and knowing Hogan to be an investment counselor with an office located in Illinois, contacted him and asked his assistance in selling partnerships units. It appears that Dingwell also wrote to Hogan at his office in Illinois soliciting the sale of these units. Through their affidavits, both Hogan and Morton assert that Hogan did

assist defendants by transmitting their literature, describing the investment potential of ELS to Morton. Although Dingwell maintains that Morton first learned of ELS from a real estate developer while in Florida, defendants have not produced the affidavit of the developer nor has Dingwell stated the source of his knowledge in that regard. Moreover, it is clear that Hogan's assistance pursuant to defendants' solicitation and Morton's performance, *i.e.*, the tender of the purchase price, occurred in Illinois. Therefore, we believe that defendants did invoke the benefits and protection of Illinois law by their solicitation of business within this State and, accordingly, we believe these activities to be of the nature and quality which will support the exercise of personal jurisdiction (*International Shoe Co. v. Washington; Cook Associates, Inc. v. Colonial Broach & Machine Co.*), notwithstanding the fact that the partnership contract was not formally accepted within and was not to be governed by the law of Illinois (*Scovill Manufacturing Co. v. Dateline Electric Co.*). We now turn to the consideration of whether plaintiffs' cause of action arose from the jurisdictional acts of defendants, as required by section 17.

■■ A cause of action "arises" from defendants' jurisdictional acts where it lies in the wake of his commercial activities by which he submitted himself to the jurisdiction of Illinois courts. (*First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 352 N.E.2d 285.) Where the jurisdictional activities consist of the solicitation of sales, a cause of action arising from the consequences of such a sale comes within the statutory definition of section 17(3). *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 219 N.E.2d 646.

Here, defendants invoked the jurisdiction of Illinois courts by their solicitation of the purchase and sale of partnership units. Morton, who purchased three units as a result of such solicitation, now alleges that defendants committed material misrepresentations and fraud in consummating the sale of these units and that the general partners breached fiduciary duties created by the terms of the limited partnership agreement. It follows that such are the consequences of the sale of the limited partnership units.

In view of the foregoing, we are of the opinion that the requirements of section 17 were met, and we find that the trial court erred in quashing the service of process.

Plaintiffs next contend that the trial court abused its discretion in denying their motion to amend the complaint. Their amendment sought only to incorporate into the complaint the factual matter contained in the affidavits of Morton and Hogan. During oral argument in this court, plaintiffs admitted that our consideration of the affidavits in determining the question of jurisdiction would obviate any prejudice resulting from

the denial of their amendment. As we have so considered the affidavits (Ill. Rev. Stat. 1975, ch. 110, par. 20), further discussion of this contention is unnecessary (*Chesterfield Sewer & Water, Inc. v. Citizens Insurance Co.* (1965), 57 Ill. App. 2d 90, 207 N.E.2d 84).

■■■ Lastly, plaintiffs argue that the trial court erred in denying their motion for costs and attorneys' fees. Section 41 of the Civil Practice Act (Ill. Ann. Stat. 1975, ch. 110, par. 41 (Smith-Hurd 1977 Supp.)) provides:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

The sanction of section 41 should be invoked only in cases falling strictly within its terms (*Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 335 N.E.2d 172) and recovery is restricted to reasonable expenses and attorneys' fees caused by the untrue allegations (*City of Springfield v. Beck* (1976), 34 Ill. App. 3d 784, 340 N.E.2d 350; *In re Estate of Palm* (1973), 11 Ill. App. 3d 24, 295 N.E.2d 580). While the denial of such a motion is a matter for the sound discretion of the trial court and, absent abuse, its determination ordinarily will not be disturbed on review (*Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d 285), it should not be denied without a hearing (*Malone v. Checker Taxi Co., Inc.* (1972), 3 Ill. App. 3d 1040, 279 N.E.3d 738). As no such hearing was conducted, we will remand the matter to the trial court with directions to conduct a hearing on the merits of the motion on which we here express no opinion.

For the reasons stated, the order quashing service of process (No. 77-1126) and the order denying plaintiffs' section 41 motion (No. 77-1251) are reversed, and this cause is remanded for further proceedings not inconsistent with the content of this opinion.

Orders reversed; cause remanded.

LORENZ and MEJDA, JJ., concur.