IRENE SILVA WIMMER, Special Adm'r *pendente lite* for the Estate of Judith Ann Silva, Deceased, *et al.*, Plaintiffs-Appellants, v. LAWRENCE KOENIGSEDER *et al.*, Defendants-Appellees.

Second District   No. 2—83—0891

Opinion filed October 19, 1984.

James J. DeSanto, of Waukegan, and Thomas M. P. Hannigan, of Mundelein, for appellants.

Steven L. Larson and William A. Holmquist, both of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Irene Silva Wimmer, individually and as special administrator *pendente lite* for the estate of Judith Ann Silva, appeals from an order granting defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction. Defendants include Gilbert, Rita, Christopher and Mark Meisgeier, as well as two foreign corporations, Rock-It North and Horsin' Around, and Lawrence Koenigseder. The trial court also granted defendant Koenigseder's motion for transfer to McHenry County.

On appeal, plaintiff contends that the trial court erred in dismissing the complaint for want of jurisdiction and erred in denying her motion for discovery into the jurisdictional facts raised by defendants' motion to dismiss. For the reasons discussed below, we believe the trial court must be reversed.

The first-amended complaint alleged that on July 17, 1982, while a

passenger in a car driven by Lawrence Koenigseder, Judith was injured in an accident in McHenry County, Illinois. She died from these injuries on July 26, 1982.

Prior to the accident 19-year-old defendant Koenigseder and 17-year-old Judith had been served intoxicating liquors at the defendants' taverns, the Rock-It North and Horsin' Around in Trevor, Wisconsin. Both taverns were approximately two-tenths of a mile north of the Wisconsin-Illinois line. Both Koenigseder and Judith were Illinois residents. The complaint alleged that defendant Koenigseder became intoxicated at the aforesaid clubs and that the car he was operating left the road and collided with a utility pole.

The plaintiff commenced this action against Koenigseder and the other defendants seeking recovery under the Wrongful Death and Survival Act (Ill. Rev. Stat. 1981, ch. 70, pars. 1, 2.1), and the Illinois Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135). The Meisgeiers were served in Wisconsin, filed special appearances and moved to quash service for want of jurisdiction. Their affidavits stated they are not Illinois residents and do not do business in Illinois as claimed in the complaint. Plaintiff's complaint also alleged that defendants' negligence was the direct and proximate cause of the injuries and subsequent death of plaintiff's minor decedent.

Affidavits of the plaintiff's attorneys were filed in accordance with Supreme Court Rule 191(b) (87 Ill. 2d R. 191(b)). These affidavits revealed, among other things, that Gil Meisgeier met with police authorities of border towns, Antioch, Winthrop Harbor, Zion, and the Lake County sheriff's office for the purpose of discussing the problem of selling liquor to Illinois residents under the age of 21. He assured the local officials he would remind his patrons to drive safely. Defendant also appeared before the Wisconsin legislature to speak in opposition to the raising of the drinking age to 21. He argued that it would be detrimental to Wisconsin tourism. He also said his waitresses serve nonalcoholic spacers to curb excessive drinking. It was also alleged that the defendant taverns handed out maps and fliers to its Illinois patrons that directed patrons to the back roads of Illinois which are not heavily patrolled by police.

In his deposition, Antioch Police Chief Charles Miller stated that in making a study for the Illinois Department of Transportation, he checked the parking lots of the two taverns in question in December 1982 and January 1983 and approximately 90% of the vehicles in the parking lots had Illinois license plates. Miller also stated that the number of drunk driving arrests increased dramatically after Illinois raised its drinking age to 21, with most arrests occurring on the southbound

lane of Route 83. These people were Illinois residents under the age of 21 returning from the defendant taverns.

Plaintiff filed other documents which, she contends, establish the basis for personal jurisdiction over the defendants in accordance with the Illinois long-arm statute. (Ill. Rev. Stat. 1981, ch. 110, par. 2—209.) These documents alleged the following facts: Gil and Rita Meisgeier own real property in Illinois; defendants advertised in the Illinois Entertainer, a monthly newspaper published in Mount Prospect, Illinois. They had advertisements appearing in the May, July, August, and October 1982 editions. The ads stated that the taverns are located on "ROUTE 83 JUST NORTH OF THE ILLINOIS STATE LINE" and "YOU NEED ONLY BE 18 TO BLAST OFF AT ROCK-IT NORTH." The June 1983 issue contained the statement "Entertainment Management by ARK (312) 932-7535 and Rock-It North" at the bottom of the advertisement. This telephone number is an Illinois exchange through which bookings may have been arranged.

Defendants' motion to dismiss was granted, and the motion for rehearing was denied. Plaintiff appeals.

The jurisdictional issue presented in the instant case has not been decided in Illinois. Thus, we are faced with the question of whether the defendants committed acts which subjected them to *in personam* jurisdiction under the Illinois long-arm statute, which provides in pertinent part:

> "(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State;
>
> (2) The commission of a tortious act within this State; ***."

Ill. Rev. Stat. 1981, ch. 110, pars. 2—209(a)(1), (2).

Plaintiff argues that defendants both committed a tort in Illinois and transacted business so as to justify the assertion of jurisdiction.

The determination of whether a nonresident defendant has performed acts sufficient to have submitted to the jurisdiction of the forum State is based upon due process notions of whether certain "minimum contacts" exist between the defendant and the forum such that requiring him to defend there is reasonable and does not offend "traditional notions of fair play and substantial justice." (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292-93, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564-65; *International Shoe Co. v. Washing-*

*ton* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The fair play and substantial justice statements were narrowed somewhat by the requirement of *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240, wherein the court stated:

> "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Another critical concern is that some relationship exists among the defendants, the forum and the litigation to make subjecting the defendants to suit reasonable. (*Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580.) Thus, the determination of the sufficiency of minimum contacts is a flexible one which focuses on the nature of defendant's activities within the forum in the context of the circumstances presented. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160; *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857.

Until 1981, Illinois courts followed this approach and interpreted the long-arm statute so as to permit the assertion of jurisdiction over nonresident defendants to the extent permitted by the due process clause. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673; *Coca-Cola Co. v. A. Epstein & Sons, International, Inc.* (1980), 89 Ill. App. 3d 253, 257, 411 N.E.2d 917.) Then, beginning with *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203, the Illinois Supreme Court made it plain that it would not necessarily expand the Illinois long-arm statute to the full extent the due process clause would allow. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436-37, 427 N.E.2d 1203; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847.) Thus, we must first consider whether defendants' conduct falls within the meaning of the long-arm statute, and, more importantly, whether there are sufficient "minimum contacts" to justify the exercise of jurisdiction by the Illinois courts over the defendants in compliance with due process safeguards. *Veeninga v. Alt* (1982), 111 Ill. App. 3d 775, 777, 444 N.E.2d 780; see *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.* (7th Cir. 1984), 726 F.2d 1209, 1214.

It has been held that the mere solicitation for business does not constitute the doing of business in Illinois. In *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 447 N.E.2d 919, a Wisconsin summer camp placed an advertisement in Illinois papers and agreed

to allow 20 Illinois adults to use the camp every year. These activities were not sufficiently substantial to constitute the doing of business in Illinois. *Loggans* involved an injury to a plaintiff who was visiting the camp eight years after she worked there. The court held that in order for plaintiff's claim to succeed, it must be one which "lies in the wake of the commercial activities by which defendant submitted to the jurisdiction of Illinois courts." (*Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 557, 447 N.E.2d 919, 925.) Because eight years had passed between plaintiff's employment and her injury, the court held that her claim did not "lie in the wake" of the defendant's commercial activities.

However, under other circumstances the solicitation of business inside Illinois has been found to be a sufficient basis for sustaining personal jurisdiction over a nonresident defendant. (*Clements v. Barney's Sporting Goods Store* (1980), 84 Ill. App. 3d 600, 602, 406 N.E.2d 43; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 373, 370 N.E.2d 1106; *cf. Colnar v. Baldknobbers* (1982), 107 Ill. App. 3d 234, 239, 437 N.E.2d 718.) The cases plaintiff cites illustrate a variety of activities in which jurisdiction has been found, although none is factually similar to the present case. In *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155, *appeal dismissed* (1980), 444 U.S. 1060, 62 L. Ed. 2d 738, 100 S. Ct. 992, a product liability action, a foreign corporation was found to be doing business in Illinois because its products regularly entered Illinois in substantial amounts. In *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857, the defendant manufacturer was held to be present and doing business in Illinois because it maintained a contractual relationship with an Illinois distributor who, subject to the defendant's inspection, was authorized to sell and required to service defendant's products. Defendant also co-sponsored an Illinois sales program in Illinois. In contrast, the court found in *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, that as the arrangement of an interview in Chicago played no part in the latter hiring of the applicant to fill a different position, the interview was not a "transaction of business" establishing jurisdiction under the long-arm statute.

■ Applying the standards utilized in the above cases, the defendants here are amenable to suit under the "transaction of any business" provision of the Illinois long-arm statute. On a motion to dismiss, taking as true the plaintiff's well-pleaded allegations and affidavits filed in apposition, as well as the deposition of Police Chief Miller, the record shows that the defendants regularly advertised in an Illinois newspaper

to make Illinois residents aware of their facilities and the advantage of Wisconsin's lower legal drinking age. Standing alone, this would be an insufficient basis for the exercise of jurisdiction. However, a significant portion, if not a vast majority, of defendants' business consisted of sales to Illinois residents. Under the circumstances presented, it was reasonable for defendants to foresee that serving alcoholic beverages to Illinois residents 18 years old or older might lead to the consequences such as those which resulted here and that those consequences might occur in Illinois. This is especially true where one of the defendants came into Illinois to address the problem of increased drunken driving arrests of underage Illinois residents returning from defendants' establishments and the defendants having made maps available to Illinois patrons which showed back roads which are not usually patrolled. Additionally, defendants' use of an Illinois telephone number in its advertising raises a strong inference of its having made business arrangements within Illinois. Therefore, we believe that the plaintiff's claim "lies in the wake" of defendants' commercial activity. *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 557, 447 N.E.2d 919, 925.

■ Also, the exercise of jurisdiction over the defendants does not violate due process requirements. Defendants had an ongoing business relationship with Illinois. By soliciting business from Illinois residents, by making them aware of their facilities and of the advantage of the lower legal drinking age in Wisconsin, the defendants invoked the benefits and protections of Illinois law during the course of its business dealings. (*Clements v. Barney's Sporting Goods Store* (1980), 84 Ill. App. 3d 600, 602, 406 N.E.2d 43; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 373, 370 N.E.2d 1106; *cf. Colnar v. Baldknobbers* (1982), 107 Ill. App. 3d 234, 239, 437 N.E.2d 718.) Although it was not alleged that plaintiff was aware of defendants' advertising, in view of defendants' activities in attracting Illinois customers and the profits which defendants regularly reap as a result of such activities, it does not offend traditional notions of fair play and substantial justice to require defendants to defend this action in Illinois. Thus, given the relationship among these defendants, this forum, and this litigation, it is reasonable to subject the defendants to suit in Illinois.

■ Further, from the facts presented it appears plaintiff's cause of action arises from the commission of a tortious act by defendants in Illinois within the meaning of subparagraph (2) of the long-arm statute. (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(a)(2).) A tortious act under this statute includes any act committed within Illinois which involves a

breach of a duty owed to another and makes the person committing the act liable to the other for damages. (*In re Estate of Wrigley* (1982), 104 Ill. App. 3d 1008, 1019, 433 N.E.2d 995.) For the purposes of the long-arm statute, "physical presence is not necessary for the commission of a tortious act within this State; \*\*\* the place of a wrong is where the last event takes place which is necessary to render the actor liable." (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 437, 427 N.E.2d 1203; see *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 435, 176 N.E.2d 761; Restatement (Second) of Conflict of Laws sec. 37 (1971).) Like *Gray*, the last event in this case was in Illinois, where the injury to plaintiff's decedent occurred. The fact that the alleged sale took place entirely in Wisconsin, as defendants point out, is of little consequence in this regard. Further, the nature and quality of the defendants' activities, as discussed earlier, also satisfy due process requirements.

Supportive of plaintiff's position are a number of out-of-State cases which are factually similar to the present case and which dealt with the question of jurisdiction being asserted over an out-of-State liquor vendor who sold alcoholic beverages to underage forum residents which ultimately led to an accident occurring in the latter State. (*Cf. West American Insurance Co. v. Westin, Inc.* (Minn. 1983), 337 N.W.2d 676; *Young v. Gilbert* (1972), 121 N.J. Super. 78, 296 A.2d 87; *Hart v. McCollum* (1977), 249 Pa. Super. 267, 376 A.2d 644.) Because no Illinois court has been confronted with the situation presented in this case, the decisions in *West American* and *Hart* are instructive here. In *West American*, the Minnesota Supreme Court cautioned that the close proximity of the foreign State to the State in which the alleged sale occurred, the convenience or reasonability of requiring an out-of-State defendant to defend in the foreign State, or the difference in laws between the forum and the State where the sale occurred, meaning that the only remedy available is in the forum State, is not sufficient to establish minimum contacts. (*West American Insurance Co. v. Westin, Inc.* (Minn. 1983), 337 N.W.2d 676, 679-81.) The court held that the defendant's only substantial contact with the forum State, the plaintiff's "unilateral activity" in driving back into the forum State, was not sufficient to support jurisdiction in the forum. (337 N.W.2d 676, 681.) The court emphasized that in light of *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559, and *Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571, the critical concern in any jurisdictional analysis should be not on the plaintiff's interest in having a case decided in a particular forum, but on the defendant's interests and contacts with the forum State. (337

N.W.2d 676, 680.) In fact, the court noted, the nonresident defendant's contacts must be such that it is able to reasonably anticipate being haled into the forum's State court. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) The court found that there must be "purposeful and deliberate contact" with Minnesota in order to invoke jurisdiction. It determined that the defendant's only demonstrable contact was the plaintiff's unilateral activity of driving to Minnesota. By contrast, in the case at bar, defendants' contacts included advertising, speaking to police authorities in communities affected by defendants' activities and the distribution of maps so defendants' patrons could take back roads and avoid police contact. We believe that this situation, together with the inference which arises from defendants' Illinois phone number on its advertising, constitutes a purposeful and deliberate contact with Illinois, far more intimate than the "unilateral activity" of driving into Illinois. An additional contact was defendants' ownership of Illinois real estate. While standing alone this would not establish minimum contacts, it can be considered along with other factors. *Rush v. Savchuk* (1980), 444 U.S. 320, 328, 62 L. Ed. 2d 516, 525, 100 S. Ct. 571, 577.

██ Defendants also argue that under the Dramshop Act its liability is not based on tort but on a purely statutory regulation of its status, which imposes liability without regard to fault. Such position is erroneous. An action brought under the Dramshop statute and its predecessors has long been considered an action in tort and is a legislative creation of new rights founded on tortious conduct. *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 917, 444 N.E.2d 504, 506.

Thus, the exercise of jurisdiction over these defendants in Illinois is both in accord with Illinois law and within the confines of due process under both subparagraphs (1) and (2) of the Illinois long-arm statute. Ill. Rev. Stat. 1981, ch. 110, pars. 2—209(a)(1),(2).

Plaintiff's final contention is that the trial court improperly refused her motion for a discovery deposition of defendant, Gil Meisgeier, on the issue of jurisdiction. Because the jurisdictional issue has been resolved, we need not address this contention.

For the reasons stated, the judgment of the circuit court of Lake County is reversed and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P.J., and NASH, J., concur.